1  MARTHA LUEMERS (SBN 104658)
   E-MAIL: luemers.martha@dorsey.com
2  DORSEY & WHITNEY LLP
   305 Lytton Ave.
3  Palo Alto, CA 94301
   Telephone: (650) 857-1717
4  Facsimile: (650) 857-1288

5  PAUL T. MEIKLEJOHN (*Pro Hac Vice*)
   E-Mail:  meiklejohn.paul@dorsey.com
6  DOUGLAS F. STEWART (*Pro Hac Vice*)
   E-Mail: stewart.douglas@dorsey.com
7  DORSEY & WHITNEY LLP
   701 Fifth Avenue, Suite 6100
8  Seattle, WA 98104
   Telephone: (206) 903-8800
9  Facsimile: (206) 903-8820

10 *Attorneys for Defendants*
   *Toshiba Corporation and*
11 *Toshiba America Information Systems*

12                      UNITED STATES DISTRICT COURT

13        NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

14

15 INNOVUS PRIME LLC,                     CASE NO. 12-cv-00659-WHO

                Plaintiff,               **DEFENDANTS' NOTICE OF MOTION**
16                                        **AND MOTION TO STRIKE PLAINTIFF'S**
   v.                                     **INFRINGEMENT CONTENTIONS AND**
17                                        **FOR AN AWARD OF FEES**

18 TOSHIBA CORP. AND TOSHIBA
   AMERICA INFORMATION SYSTEMS,
   INC,
19                                        Date:  September 11, 2013
                Defendants.              Time:  2:00 p.m.
20                                        Courtroom: 2, 17th Floor
                                          Judge:  Hon. William H. Orrick
21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT
CONTENTIONS - Case No. 12-cv-00659-WHO

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

3

NOTICE IS HEREBY GIVEN that on September 11, 2013, at 2:00 p.m., or as soon

4

thereafter as the matter may be heard in Courtroom 2, 17th floor of the above-entitled Court,

5

located at 450 Golden Gate Ave., San Francisco, California, 94102, Defendants Toshiba

6

Corporation and Toshiba America Information Systems, Inc. ("Toshiba") will, and hereby do,

7

move this Court for an order striking Plaintiff Innovus Prime LLC's ("Innovus") infringement

8

contentions and for an award of fees.  This motion is made on the grounds that Innovus's

9

Infringement Contentions fail to comply with the minimum requirements of Patent Local Rule 3-

10

1 and with this Court's May 10th, 2013 Order striking Innovus's previous infringement

11

contentions.  Accordingly, the latest set of infringement contentions should be stricken.

12

This motion is based on this Notice of Motion and Motion, the Memorandum of Points

13

and Authorities below, the Declaration of Paul T. Meiklejohn ("Meiklejohn Decl.") filed

14

concurrently herewith, the papers and records on file herein, and such other documentary and

15

oral evidence and argument as may be presented at the hearing on the motion.

16

As explained below, Toshiba has met and conferred with Innovus in an attempt to resolve

17

the present dispute before filing this motion.  Notwithstanding these efforts, the parties have

18

reached an impasse regarding the present dispute.

19

A proposed order is also filed concurrently herewith.

20

21

22

23

24

25

26

27

28

i

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT
CONTENTIONS - Case No. 12-cv-00659-WHO

1

**TABLE OF CONTENTS**

2

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................... 2

   A. The Deficiencies in Innovus's Previous Sets of Infringement Contentions ........... 2

   B. The Hearing And Order Granting Toshiba's Motion to Strike ............................... 5

   C. Deficiencies in Innovus's Third Set of Infringement Contentions ........................ 7

      1. Innovus's Amended Contentions Continue to Set Forth Completely
         Unsupported Assertions in Violation of the Patent Local Rules ................ 8

      2. Innovus's Amended Contentions Fail to Link Other Claim
         Elements to the Accused Products as Required by The Patent Local
         Rules ............................................................................................................ 11

      3. Innovus Has Not Provided Any Explanation For Charting Only
         One of More Than Forty Accused Products ............................................ 12

III. ARGUMENT ...................................................................................................... 13

   A. Innovus's Infringement Contentions Violate Patent Local Rule 3-1 By
      Failing to Cite Any Factual Basis Whatsoever to Support Allegations That
      the So-Called "Chip Assembly" Performs Any Element of the Claims .............. 14

   B. Innovus's Supposed "Support" For Other Contentions Does Not Address
      the Specific Elements of the Claims Or Provide a Link To The Accused
      Products ................................................................................................................. 18

   C. Innovus Has Failed To Demonstrate That Its Single Claim Chart is
      Representative of All Accused Products ................................................................. 20

   D. Innovus's Vague and Boilerplate Statements Regarding the Doctrine of
      Equivalents Do Not Comply With The Patent Local Rules ................................... 21

   E. Innovus's Repeated Failures to Comply With The Patent Local Rules
      Warrant Striking Its Infringement Contentions Without Leave to Amend .......... 22

IV. CONCLUSION .................................................................................................. 23

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Acer, Inc. v. Tech. Properties Ltd.*,
    2010 WL 3618687 (N.D. Cal. Sept. 10, 2010) ..................................................... 23

*Bender v. Advanced Micro Devices, Inc.*,
    No. C–09–1149 MMC (EMC), 2010 WL 363341 (N.D. Cal. Feb. 1, 2010)................... 19, 20

*Bender v. Freescale Semiconductor, Inc.*,
    No. C 09-1156 PHJ (MEJ), 2010 WL 1689465 (N.D. Cal. April 26, 2010) ............. 16, 19, 20

*Bender v. Infineon*,
    2010 WL 964197 (N.D. Cal. March 16, 2010) ..................................................... 21

*Bender v. Infineon*,
    2010 WL 964207 (N.D. Cal. March 16, 2010) ..................................................... 20

*Bender v. Maxim Integrated Prods., Inc.*,
    No. C 09-01152 SI, 2010 WL 1135762 (N.D. Cal. March 22, 2010)............ 13, 14, 15, 16, 19

*Bender v. Maxim Integrated Prods.*,
    No. C 09-01152 SI, 2010 WL 2991257 (N.D. Cal. July 29, 2010) ....................... 14

*Bender v. Micrel Inc.*,
    No. C 09-01144 SI, 2010 WL 520513 (N.D. Cal. Feb. 6, 2010) ...................... 17, 20

*Canvs Corp. v. U.S.*,
    107 Fed. Cl. 100 (Ct. Fed. Cl. 2012)................................................................ 17

*CSR Tech. v. Freescale Semiconductor*,
    2013 WL 503077, (N.D. Cal. Feb. 8, 2013)....................................................... 18

*Digital Reg of Texas, LLC v. Adobe Sys. Inc.*,
    No. CV 12–01971–CW (KAW), 2013 WL 633406 (N.D. Cal. Feb. 20, 2013) .............. 20

*GN Resound A/S v. Callpod, Inc.*,
    2013 WL 1190651 (N.D. Cal. Mar. 21, 2013)................................................ 13, 14, 15

*Implicit Networks, Inc. v. HewlettPackard Co.*,
    No. C 10–03746 SI, 2011 WL 3954809 (N.D. Cal. Sep. 7, 2011) ....................... 21

*Infineon Techs. v. Volterra Semiconductor*,
    No. C 11–6239 MMC (DMR), 2012 WL 4808445 (N.D. Cal. Oct. 9, 2012)................ 13

*Infineon Techs. v. Volterra Semiconductor*,
    No. C 11–6239 MMC (DMR), 2013 WL 322570 (N.D. Cal. Jan. 28, 2013) ............... 17

iii

*InterTrust Techs. Corp. v. Microsoft Corp.*,
    No. C 01-1640 SBA, 2003 WL 23120174 (N.D. Cal. Dec. 1, 2003) .................................... 13

*MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*,
    No. C 01–4925 SBA, 2004 WL 5363616 (N.D. Cal. Mar. 2, 2004) ..................................... 22

*Network Caching Tech., LLC v. Novell, Inc.*,
    No. C-01-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002)................................. 19

*Optimumpath, LLC v. Belkin Int'l, Inc.*,
    No. C 09–01398 CW, 2011 WL 1399257 (N.D. Cal. April 12, 2011) ................................... 21

*Rambus Inc. v. Hynix Semiconductor Inc.*,
    2008 WL 5411564 (N.D. Cal. Dec. 29, 2008) ................................................................ 21, 22

*Shared Memory Graphics LLC v. Apple, Inc.*,
    812 F. Supp. 2d 1022 (N.D. Cal. 2010) ...................................................................... 16

*Shared Memory Graphics LLC v. Apple Inc.*,
    No. C–10–02475 MMC (JSC), 2011 WL 3878388 (N.D. Cal. Sept. 2, 2011) ................ 14, 23

*Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*,
    Case No. C 11–04100 WHA, 2012 WL 1253178 (N.D. Cal. Apr. 13,
    2012) ............................................................................... 14, 15, 16, 17, 19, 22

*Theranos, Inc. v. Fuisz Pharma LLC*,
    Nos. 11-cv-05236-YGR, 12-cv-03323-YGR, 2012 WL 6000798 (N.D. Cal. Apr. 4,
    2012) ................................................................................................. 14, 15, 23

**OTHER AUTHORITIES**

L.R. 3-1 ................................................................................................. 13, 14, 22

L.R. 3-1(c) ............................................................................................ 13, 16, 20

L.R. 3-1(e) ............................................................................................ 21

L.R. 3-6 ................................................................................................. 23

# I.    INTRODUCTION

Plaintiff Innovus Prime LLC ("Innovus") has now been afforded three separate chances to provide preliminary patent infringement contentions that comply with the Patent Local Rules. But despite these multiple opportunities, spanning the course of the last seven months, Innovus still has come no closer to identifying specifically what it contends is infringing in Defendants' Accused Products.  Instead, notwithstanding the fact that this Court struck Innovus's previous set of inadequate infringement contentions, and warned that Innovus would not be given another opportunity to amend, Innovus continues to rely on unsupported assumptions, completely devoid of any factual basis, to allege that each of the claim elements are present in the Accused Products.  As Toshiba has repeatedly pointed out, however, Innovus's lack of factual support fails to put Toshiba on notice of what basis Innovus has for its contention that the Accused Products allegedly infringe.   This lack of factual support also fails to crystallize Innovus's infringement position, violating both the Patent Local Rules and this Court's Order.

Even where Innovus purports to provide a factual basis for some of its contentions, the references cited by Innovus do not map the claim language to the Accused Products.  Indeed, many of the references cited by Innovus do not mention, much less discuss, the specific claim elements recited in the asserted patent.  Even more troubling, a number of these references do not mention Toshiba, they do not mention the Accused Products, and they do not mention the functionality that Innovus accuses of infringement.  In short, Innovus's alleged "support" does not in fact support any of its contentions.

Moreover, although Innovus has now accused more than forty products of infringing its patent, it has only offered a claim chart for <u>one</u> of those products.  In so doing, Innovus has made no attempt to satisfy its burden of showing that this lone product is actually representative of the dozens of other products it has accused of infringement.  Instead, consistent with its approach throughout this litigation, Innovus casually asserts−without any support−that the single product it charted is representative of all the other Accused Products and that it need do nothing more. Such bare assertions are wholly insufficient to discharge Innovus's obligations under the Patent

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS - Case No. 12-cv-00659-WHO

Local Rules.

Having now been afforded three bites at the apple, Innovus should be given no more. Given the lengthy history of its infringement contentions for U.S. Patent No. 5,280,350 ("the '350 patent"), it is now readily apparent that Innovus has no factually based infringement theory. Because Innovus has demonstrated that it is unable to offer any infringement theory that conforms to this Court's Order and the requirements of the Patent Local Rules, defendants Toshiba Corporation and Toshiba America Information Systems, Inc. (collectively "Toshiba" or "defendants") request that this Court strike Innovus's deficient contentions.

## II.        FACTUAL BACKGROUND

### A.        <u>The Deficiencies in Innovus's Previous Sets of Infringement Contentions</u>

It is now abundantly clear that Innovus had no idea, at the time it filed suit, whether any of Toshiba's products infringed any claim of the patent-in-suit.  Innovus still has no idea. Indeed, it has spent the last several months trying to meet the requirements of the Local Patent Rules−i.e., providing its theory of infringement−something it should have prepared before ever filing suit.  But the fact is that Innovus has no real theory.  As partially documented in the briefing for Toshiba's previous Motion to Strike ("First Motion To Strike"), Innovus has now been given multiple opportunities to serve infringement contentions that comply with the Patent Local Rules.  *See* Dkt. No. 33.  This long process began on November 21, 2012, when Innovus served its initial Infringement Contentions ("Initial Contentions"), alleging infringement of claims 1-6 of the '350 patent.  *Id.* at 2.

The Initial Contentions were woefully deficient.  Indeed, in most cases, Innovus relied on nothing more than assumptions to allege that the Accused Products practice the elements of the claims.  *Id.* at 2-4.  And to the extent that the Initial Contentions purported to provide any factual support for certain allegations, Innovus's alleged support did not map any element of the claims to the Accused Products.  *Id.*  For instance, Innovus cited to a website and press release that never even mentioned the recited claim elements, let alone provided any basis for alleging infringement.  *Id*.  The press release was, in fact, directed to products that were not even accused of infringement in the case.  *Id.* at 3-4.  After Toshiba advised Innovus of these and numerous

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS - Case No. 12-cv-00659-WHO

1   other deficiencies, Innovus provided its First Amended Preliminary Infringement Contentions

2   ("First Amended Contentions") on January 28, 2013.

3           Innovus's First Amended Contentions were not improved.  Once again, Innovus failed to

4   provide any factual support whatsoever for numerous allegations.  Dkt. No. 33, at 5-6.  Instead,

5   Innovus conclusorily alleged that the Accused Products performed various different functions, or

6   contained numerous different components "or their equivalent," without citing to a single

7   document, reference, or other piece of factual information to substantiate such assertions.  *Id.*

8   Innovus also alleged that many of these functions and components were "standard products," but

9   it did not cite to a single television standard to support any of these statements.  *Id.*  And when

10  Toshiba reviewed a television standard that Innovus had referenced elsewhere, Toshiba was

11  unable to find any mention of these so-called "standard products."  *Id.* at 6, n.2.  In short,

12  Innovus's unsupported statements and allegations demonstrated that it had no idea about the

13  function, structure, or operation of the Accused Products, let alone how the Accused Products

14  allegedly infringed.

15          Even where Innovus professed to provide any support for certain contentions, its alleged

16  support was illusory.  Dkt. No. 33 at 7-9.  In many instances, Innovus relied on the same,

17  deficient materials cited in the Initial Contentions.  *Id.*  And while Innovus pointed to Wikipedia

18  articles and webpages of undetermined source to support its contentions, these Wikipedia articles

19  and webpages provided no nexus between the Accused Products and the recited claim elements.

20  They did not mention a single Accused Product, they did not mention ClearScan (a functionality

21  that Innovus accuses of infringement), they did not mention Toshiba, and they did not mention

22  the patent-in-suit.  *Id.*  These supposed "references" did not even suggest that the Accused

23  Products contained the various components that Innovus accused of infringement, let alone that

24  such components actually performed the elements of the claims.

25          In one particularly notable and surprising example, Innovus alleged that the Accused

26  Televisions "include an electrical filter-processing assembly, or the like."  Dkt. No. 33, at 8-9.

27  To support this assertion, Innovus typed the phrase "toshiba electronic filtering" into an internet

28  search engine and copied screenshots of the advertisements generated by the search engine.  *Id.*

3

1  at 9. These results were not even remotely related to "electrical filter-processing assembl[ies]"

2  for televisions.  Instead, the first advertisement was for a website that sold water filters, the

3  second advertisement was for a website that sold air filters, and the third was for a website that

4  sold silicon seals for electro-magnetic interference.  *Id.*  Advertisements for water filters, air

5  filters, and silicon seals clearly have no relevance to whether the Accused Products−digital

6  televisions−have an "electrical filter-processing assembly."

7      After failing to reach a resolution on these and other deficiencies, Toshiba filed a Motion

8  to Strike.  *See* Dkt. No. 33.  In response to Toshiba's motion, however, Innovus did not address

9  the many inadequacies that Toshiba had highlighted.  *See* Dkt. No. 44.  Indeed, Innovus spent

10  only a few pages of its twenty-five page Opposition defending its Amended Infringement

11  Contentions.  *Id.* at 17-21.  And to the extent it made any attempt to defend its contentions,

12  Innovus simply−and wrongly−accused Toshiba of seeking "proof" for its infringement theory.

13  *See id*.  Aside from this, however, Innovus ignored the numerous specific issues presented in

14  Toshiba's motion.

15      But even Innovus did not believe in its first two sets of infringement contentions.

16  Instead, implicitly admitting that its first two sets of infringement contentions were deficient,

17  Innovus filed yet a third set of infringement contentions with its Opposition ("Third Infringement

18  Contentions"), and dedicated the vast majority of its Opposition to arguing why these

19  contentions should be allowed.  *See* Dkt. No. 47 at 4-5, 8.  Innovus also expanded these

20  contentions to allege infringement against a number of entirely new products that had never

21  previously been accused of infringement.  *Id.*

22      In filing its Third Infringement Contentions, however, Innovus ignored the requirement

23  that it must provide good cause for amending after the Court-ordered deadline, which, under the

24  Patent Local Rules, requires: (1) a showing of diligence by Innovus; and (2) a lack of prejudice

25  to Toshiba.  *Id.*  Indeed, Innovus never even mentioned−let alone established−diligence in

26  seeking to amend its contentions months after the deadline.  *Id.* at 8-10.  It also casually brushed

27  aside the prejudice to Toshiba in alleging infringement of numerous new products for the first

28  time in its new infringement contentions.  *Id.* at 10-13.

4

**B.**     **The Hearing And Order Granting Toshiba's Motion to Strike**

On May 8, 2013, the Court held a hearing on Toshiba's First Motion to Strike.  During the hearing, the Court agreed that Innovus's second set of infringement contentions were indeed inadequate. Transcript of May 8 hearing, at 23:18-20.  In fact, Innovus's "attempt[] to file the third set is an acknowledgement on [Innovus's] part that there was something deficient in the first set." *Id.* at 20:15-18.

The Court also questioned Innovus regarding its diligence−or lack thereof−in seeking to amend the contentions yet again.  "Tell me what good cause could I find to give you, assuming I agree with the Defendant, and I do, that the second set of Infringement Contentions is inadequate?  What good cause could you articulate for permitting you an opportunity to submit a third set?" *Id.* at 20:19-23.  Ultimately, however, "[n]othwithstanding I haven't heard a lot of diligence articulated [by Innovus] . . . in locating the additional information," the Court granted Innovus one more opportunity to submit infringement contentions that complied with the Patent Local Rules. *Id.* at 24:7-14.  Moreover, "[b]ecause the patent rules do contemplate the invalidity contentions after the infringement contentions," the Court agreed that the date for Toshiba's invalidity contentions be extended, and that "we will just push [the other dates]" according to the Patent Local Rules.  *Id.* at 27:3-5.

But the Court gave Innovus very detailed instructions regarding its obligations in amending the contentions yet again.  The Court instructed Innovus that "your responsibility is very, very specific.  You have to identify the component that practices [each claimed element]." *Id*. at 25:13-14.  The Court also made it clear to Innovus that "[y]ou have to do it with sufficient specificity so the defendant can object if they wish to object to it."  *Id.* at 25:21-23.  While the Court gave Innovus the option of resubmitting the Third Infringement Contentions "if you wish," (*id*. at 23:21-23), it also cautioned Innovus:  "You use your own judgment as to how you want to amend the proposed third set because defense counsel has articulated several ways and it seems fairly persuasive why he thinks they are inadequate."  *Id.* at 24:16-20.

Although the Court also allowed Innovus to include the additional products that it had added to its Third Infringement Contentions, the Court precluded Innovus from accusing any

5

more products of infringement. "You are limited to the Accused Products that you have identified to date . . . That's it. You are limited. Between now and the time you file your contentions, if you discover something else, that's too bad. You are limited from today's date." *Id*. at 24:23-25:5. Moreover, while the Court did not foreclose the possibility that Innovus could use representative claim charts, it instructed Innovus regarding its responsibility in the event it sought to do so. "But it's your responsibility to identify each Accused Device and which component in each Accused Device." *Id.* at 28: 4-5. "So you can use a representative sort of claim chart but only for those claims that exist in each of the products in the same way." *Id.* at 28:20-22. The Court also cautioned, however, that its comments should not be taken as a signal that a single claim chart for a single Accused Product was automatically acceptable: "But I can't say since I don't know the products." *Id.* at 28:6-7.

Finally, the Court warned Innovus that it would be sanctioned if it served deficient infringement contentions again:

> But you've heard the objections. If I get another motion, if I get another motion as to the adequacy of the so-called third set of contentions and if I find that they are, themselves, inadequate, not only will they be stricken with no further leave to amend, but I am going to assess costs against your client for the expenses of Toshiba in bringing yet another motion to strike.

*Id.* at 23:24-24:5.

On May 10, 2013, two days after the hearing, the Court issued its Order Granting Motion to Strike. Dkt. No. 52. The Court ordered Innovus to serve amended infringement contentions by June 5, 2013, "which must identify the specific components(s) of the accused products where each asserted claim limitation may be found, and which are limited to the 41 accused products identified to date." *Id.* at 1:22-24. The Court's Order also stated that "[b]ecause this is plaintiff's third opportunity to provide infringement contentions, if the amended contentions are inadequate, plaintiff may be denied a further opportunity to amend the contentions and may be ordered to pay costs if defendants prevail on another motion to strike." *Id.* at 1:24-28. The Court also extended the date for Toshiba to serve invalidity contentions until 45 days after receipt of the amended infringement contentions. *Id.* at 1:28-2:2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.      Deficiencies in Innovus's Third Set of Infringement Contentions

On June 19, 2013, Toshiba received Innovus's Supplemental First Amended Preliminary Infringement Contentions ("Fourth Infringement Contentions"), alleging infringement of Claims 1-6.[1] Meiklejohn Decl., Exh. 1, at 1-2.  In the Fourth Infringement Contentions, Innovus alleges that, for each of these claims, "[i]nfringement has been direct and literal and/or under the doctrine of equivalents," *id.* at 2, thereby acknowledging that it still does not know what its theory of infringement might be.

Apparently recognizing that the Third Infringement Contentions submitted with its Opposition are deficient, Innovus drastically changed its contentions yet again.  For instance, Innovus's Third Infringement Contentions were directed to four different TV models:  the Toshiba 55L7200U, 55WX800U, 46SV685D, and 47ZXV650U.  Dkt. No. 47 at 11.  But the latest set of infringement contentions are now directed to an entirely different model, the 55G300U television, and make no mention of the four television models that Innovus previously referenced.  *See., e.g.*, Meiklejohn Decl., Exh. 1, at 5-33 (repeatedly referencing the 55G300U television).   And while the Third Infringement Contentions alleged that various different components, such as the so-called "TC90240XBG chip" and "74VHC/74AC and 74VCX/LCX/LVX multiplexers," performed different elements, Innovus's Fourth Infringement Contentions have forsaken this approach.  Instead, Innovus now refers simply to a generic "chip assembly," stating that "at least one" of the components that it accuses of infringement is contained somewhere "within at least one of the chips" in the assembly.  *See., e.g.*, Meiklejohn Decl., Exh. 1, at 18, 25, 26, 30, 31, 33.

After again identifying numerous deficiencies in Innovus's Fourth Infringement Contentions, Toshiba informed Innovus that it would be filing the present Motion to Strike. After Toshiba had already performed substantial work on the present motion, Innovus indicated that it would drop its infringement allegations as to claims 1 and 4, and would seek to file yet

---

[1] On June 6, 2013, the Court granted Innovus's unopposed *ex parte* motion to extend the date for serving its amended infringement contentions.  Dkt. No. 58.  Pursuant to the Court's Order, Innovus served its Third Infringement Contentions by mail on June 10, 2013.  But due to an apparent delay at a Post Office processing facility, Toshiba did not receive them in the mail until June 19, 2013.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS - Case No. 12-cv-00659-WHO

1    another set of infringement contentions directed solely to claims 2, 3, 5, and 6.  *See* Dkt. No. 59.

2    As of the date this Motion was filed, Innovus has yet to serve its promised set of infringement

3    contentions, but in reliance on Innovus's representations to Toshiba and this Court, *see id.*,

4    Toshiba does not address the many deficiencies in claims 1 and 4.

5          Regardless of the numerous issues with claims 1 and 4, however, Innovus's contentions

6    regarding claims 2, 3, 5, and 6 are still substantially deficient.  Indeed, rather than invest the time

7    required by the Patent Local Rules to provide a factual basis for its allegations or admitting that

8    it has no theory of infringement, Innovus has again resorted to assumptions and reliance on

9    references that do not address the specific elements of the claims.  Such contentions fail to

10   comply with the Patent Local Rules.

11           1.      **Innovus's Amended Contentions Continue to Set Forth Completely**
                   **Unsupported Assertions in Violation of the Patent Local Rules**

12         Similar to its previous sets of contentions, Innovus again fails to provide any factual basis

13   for a number of assertions in its Fourth Infringement Contentions, instead merely assuming the

14   presence of numerous claim elements.  For example, claims 2, 3, 5, and 6 require "performing a

15   motion compensated interpolation to obtain an additional line between two adjacent lines . . ."

16   But aside from its conclusory statements, addressed separately in the next section below, about

17   <u>how</u> motion compensation is allegedly performed in the Accused Products, Innovus has not

18   provided any factual support for its allegations regarding <u>where</u> this element is allegedly

19   performed in the Accused Products.

20         Innovus instead provides four photographs of a circuit board from the one television it

21   charted, circles several chips which it labeled "chip assembly 14," and then simply concludes

22   that the claimed "motion compensated interpolation" elements are somehow performed

23   somewhere within this assembly.  For example, Innovus states:

24              Motion compensated interpolation for the Toshiba TV to obtain an

25              additional line between two adjacent lines of a given field  from picture
                information of at least one neighboring field is performed on the main

26              circuit board 10 by chip assembly 14.  The chip assembly 14 generates the
                additional line between existing adjacent lines of a given field to make

27              animation more fluid and to compensate for display motion blur.  The
                existing adjacent lines that the chip assembly 14 uses are of the field from

28              picture information of at least one of the neighboring fields.  Input sources

8

1    may be interpolated to 1080i (interlace) or 1080p (progressive).[2]

2    *See., e.g.*, Meiklejohn Decl., Exh. 1, at 16, 23, 30, 32, 33.

3    But Innovus provides no factual support whatsoever for any of these statements.  Innovus

4    does not cite to a single specification, reference, test report, or document that even discusses the

5    so-called chip assembly.  Nor has Innovus pointed to one piece of factual information to

6    substantiate its allegations that the chip assembly: (1) performs motion interpolation; (2)

7    "obtain[s] an additional line between two adjacent lines of a given field from picture information

8    of at least one neighboring field"; (3) "generates the additional line between existing adjacent

9    lines of a given field to make animation more fluid"; (4) uses "adjacent lines . . . of the field from

10   picture information of at least one of the neighboring fields"; or (5) performs any other alleged

11   function recited in the claims.  In short, Innovus simply asks Toshiba and this Court to assume

12   the presence of these elements in the chip assembly.  But Innovus has conducted no analysis of

13   the chip assembly and thus does not know whether there is infringement or not.

14   Innovus also fails to explain precisely where, within the chip assembly, it believes that

15   the "motion compensated interpolation" element occurs.  Instead, Innovus alleges only that

16   motion compensated interpolation is performed by the "chip assembly" itself, but does not

17   explain what component(s) within the assembly perform the recited step.  *See., e.g.*, Meiklejohn

18   Decl., Exh. 1, at 16, 23, 30, 32, 33.  To the extent that Innovus alleges that multiple chips in the

19   assembly perform the claimed element, it has not explained how the chips work together to

20   perform the so-called interpolation step, including which chip(s) perform which function of the

21   motion interpolation step.  And to the extent that Innovus alleges that only one chip performs the

22   steps, Innovus has not stated which chip performs motion compensated interpolation, or how it

23   does so.

24   Such vague statements make it impossible for Toshiba (or anyone else) to understand

25   Innovus's infringement contentions. Indeed, Innovus has not even identified the make or model

26   number of the so-called chip assembly that allegedly performs these elements.  In failing to

27

28   [2] The numbers referenced in the contentions represent Innovus's designations for various components in the picture it took.

9

provide such factual information, Innovus has shifted the burden to Toshiba to try to determine what this so-called chip assembly is and precisely how Innovus contends that it allegedly performs the functions of the elements of the claims. This does not comport with the Patent Local Rules.

The same is true for the "vertical filtering" element, which is recited in all the claims and which requires "vertically filtering [or means for vertically filtering] said additional line using at least one of said adjacent lines of said given field." Dkt No. 1, Appx. A. The claims further limit this element through the use of wherein clauses:

- Claim 2: "wherein said additional line and said adjacent lines of said given field are multiplexed to form a non-interlaced picture signal."

- Claim 3: "wherein said additional line and said adjacent lines of said given field are processed to form a field of an interlaced picture signal having a doubled line number."

*Id. See also* claims 5 and 6.

Innovus again simply assumes the presence of these elements in its contentions. For example, in its contentions for claim 2, Innovus alleges:

> Chip assembly 14 of the Toshiba TV includes at least one filter (spatial or vertical filter) contained within at least one of the chips for filter processing the additional line using at least one of the adjacent lines of the field. The chip assembly 14 (and as part of the filtering process) includes a multiplexer within one of the chips for multiplexing the additional line and the adjacent lines of the given field to form a non-interlaced picture signal.

Meiklejohn Decl., Exh. 1, at 18. Innovus then adds language to mimic the various "wherein" clauses for each claim. For example, Innovus amended the last sentence of the above phrase for claim 3, stating that "[t]he circuit board 10 including the chip assembly 14 (and as part of filtering process) processes the additional line and the adjacent lines <u>to form a field of an interlaced picture signal having a doubled line number</u>." *Id.* at 25-26 (emphasis denoting language copied from claim 3).

As with the motion interpolation step, however, Innovus does not cite to a single specification, reference, test report, or other information to support its assertions regarding the

10

so-called chip assembly.  Instead, Innovus again asks the Court and Toshiba to blindly assume that the chip assembly performs these elements sight unseen.  Nor has Innovus identified specifically where this element is found in the Accused Products.  Innovus offers only the qualified statement that "at least one of the chips" "includes at least one filter" that supposedly performs the claimed element.  *See, e.g.*, *id.* at 18, 25, 26.  But Innovus has not identified <u>any</u> filter in the chip assembly or even <u>any</u> specific chip in the assembly, much less a specific filter within a specific (and as yet unidentified) chip.  Nor has Innovus identified any of the other supposed components, such as a "multiplexer," that it alleges are "included" in the chip assembly.  Such vague contentions handcuff Toshiba in trying to understand specifically what Innovus accuses of infringement and where the allegedly infringing components can be found.

### 2.  Innovus's Amended Contentions Fail to Link Other Claim Elements to the Accused Products as Required by The Patent Local Rules

To the extent that Innovus purports to provide any factual support for its other contentions, its alleged "support" remains illusory.  For instance, Innovus continues to rely on the same website advertisement and press release that it relied on in its first two sets of deficient Infringement Contentions to support the assertion that the Accused Products perform a "motion compensated interpolation" step.  *See* Section II.A, *supra*.  But as Toshiba previously pointed out, at no point do these references even mention "motion compensated interpolation," much less "obtain[ing] an additional line between two adjacent lines of a given field from picture information of at least one neighboring field" as the claims require.  *Id.*  And these continue to be the only references that Innovus cites in its contentions for apparatus claims 5 and 6.

The only other documents Innovus cites regarding the "motion compensated interpolation" step−and then only for method claims 2 and 3−are a specification and owner's manual for one of the Accused Products.  But the specification merely demonstrates that the television has a 1080p output, while the owner's manual indicates that, in the one television charted by Innovus, the ClearFrame functionality can be optionally activated.  Meiklejohn Decl., Exh. 1, at 14, 21.  The owner's manual further describes ClearFrame as an "anti-blur technology" that "doubles the frame rate."  *Id.*  But like the press release and webpage discussed

above, the owner's manual does not discuss "interpolation," "obtain[ing] an additional line between two adjacent lines of a given field," or doing so "from picture information of at least one neighboring field."  In short, these references do not provide a factual basis for asserting that the Accused Products meet the elements of the claims.  Innovus provides no other reference or factual basis for its contention that the Accused Products practice the "motion compensated interpolation" element of the claims.

Likewise, Innovus fails to provide a factual link between the "vertical filtering" element and the Accused Products.  Innovus copies and pastes some of the same attorney argument it provided for the "motion compensated interpolation" element, alleging that this also supports "vertical filtering." *See* Meiklejohn Decl., Exh. 1, at 16-18, 23-25.  While Innovus also cites to a Wikipedia article and a patent discussing examples of so-called "flicker filters," the sections cited by Innovus in its contentions do not discuss the specific elements recited in the claims. *See id*.  Even more telling, however, is the fact that these references never mention the Accused Products, never mention ClearFrame, never mention Toshiba, and never mention the patent-in-suit.

Indeed, the only document cited by Innovus that even mentions Toshiba is the owner's manual for one television, which Innovus references for the proposition that a television can process a signal "without adding flicker or reducing image brightness." *Id.*  But nowhere in the cited information does the owner's manual mention "vertical filtering."  And Innovus has failed to provide any support for its contention that processing a signal "<u>without adding</u>" flicker, as described in the owner's manual, is in any way relevant to using a filter "<u>to remove</u>" flicker.  In short, Innovus's contentions provide no basis to suggest that the Accused Products perform its so-called vertical filtering step.

### 3.    Innovus Has Not Provided Any Explanation For Charting Only One of More Than Forty Accused Products

Notwithstanding this Court's instruction, Innovus has also failed to provide an explanation for why the single claim chart it provided for an Accused Product is representative of all the Accused Products.  Specifically, Innovus states:

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS - Case No. 12-cv-00659-WHO

> Circuit Board (part no. 75026684) 10 for Toshiba's TV's is representative of all circuit boards for Toshiba TVs listed in the Complaint, as well as those additional TVs listed by Innovus in its prior Supplemental First Amended Infringement Contentions . . . . Thus, there is no need to obtain and describe the circuit boards for each and all of the Toshiba TVs.

Meiklejohn Decl., Exh. 1, at 33, n.1.  But Innovus fails to provide a factual basis or explanation for its claim that the circuit board it referenced is, in fact, representative of circuit boards for the 40 other Accused Products.

Indeed, Innovus's allegation is directly undermined by the twelve "examples of other Toshiba Television model numbers" that it listed.  *See id.*  As a cursory review confirms, <u>not one</u> of these twelve "example" televisions uses a circuit board with the same part number as the lone television that Innovus charted (part no. 75026884).  *Id.*  Innovus's unsupported assertion that the single television it charted is representative of all other accused televisions is thus surprising given its acknowledgement that none of the circuit boards even share the same part number. And aside from the twelve televisions mentioned in the chart, Innovus completely ignores the dozens of other Accused Products.  *See id.*

### III.    ARGUMENT

"'The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims.'" *Bender v. Maxim Integrated Prods., Inc.*, No. C 09-01152 SI, 2010 WL 1135762, at *2 (N.D. Cal. March 22, 2010) (citation omitted). To accomplish this, Patent Local Rule 3-1 "requires a patent plaintiff to forthrightly set forth the specifics of its infringement contentions." *Infineon Techs. v. Volterra Semiconductor*, No. C 11–6239 MMC (DMR), 2012 WL 4808445, at * 3 (N.D. Cal. Oct. 9, 2012); Patent L.R. 3-1(c) (requiring "[a] chart identifying <u>specifically</u> where each limitation of each asserted claim is found within each Accused Instrumentality") (emphasis added).  The standard requires precision. "The purpose of Rule 3–1 is [to] be 'nit picky, to require a plaintiff to crystalize its theory of the case and patent claims.'" *GN Resound A/S v. Callpod, Inc.*, 2013 WL 1190651, at *2 (N.D. Cal. Mar. 21, 2013) (citations omitted); *InterTrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640 SBA, 2003 WL 23120174, at * 3 (N.D. Cal. Dec. 1, 2003).

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS - Case No. 12-cv-00659-WHO

1    Accordingly, to meet its obligations under the Patent Local Rules, Innovus must

2  "articulate the precise way in which it believes the [accused] products to be infringing."

3  *Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*, Case No. C 11–04100 WHA, 2012 WL 1253178 at *4

4  (N.D. Cal. Apr. 13, 2012) (emphasis added).   "[V]ague and conclusory contentions are

5  inadequate."   *Theranos, Inc. v. Fuisz Pharma LLC*, Nos. 11-cv-05236-YGR, 12-cv-03323-YGR,

6  2012 WL 6000798, at *4 (N.D. Cal. Apr. 4, 2012) (noting that a plaintiff's "'vague contentions

7  and conclusory statements' which invite defendants and the court to assume that a limitation

8  exists fall short of providing a 'meaningful description of its theories' under Patent L.R. 3–1")

9  (citation omitted).   Innovus must instead "'put forth information so specific that either reverse

10  engineering or its equivalent is required.'"  *GN Resound A/S v. Callpod, Inc.*, 2013 WL 1190651,

11  at *2 (N.D. Cal. Mar. 21, 2013) (citations omitted).   "There is no exception in the Rule for

12  parties who do not want to spend the time and resources necessary to identify specifically where

13  each limitation is found."   *Shared Memory Graphics LLC v. Apple Inc.*, No. C–10–02475 MMC

14  (JSC), 2011 WL 3878388, at *5 (N.D. Cal. Sept. 2, 2011).

15    Despite this Court's instructions, Innovus's latest infringement contentions still fall far

16  short of the requirements of Patent Local Rule 3-1.   In many instances, Innovus has provided

17  nothing more than bare and conclusory allegations, completely unsupported by any factual basis.

18  Even where it purports to provide factual support, the references it cites do not bear a rational

19  relationship to the claim elements, much less the Accused Products.   And Innovus has failed to

20  provide any justification for serving only one claim chart.   Simply put, these contentions fall far

21  short of the most minimal requirements of Patent Local Rule 3-1 and demonstrate that Innovus

22  has failed to heed this Court's prior warnings regarding its deficiencies.

23    **A.    Innovus's Infringement Contentions Violate Patent Local Rule 3-1 By Failing to Cite Any Factual Basis Whatsoever to Support Allegations That the So-**

24  **Called "Chip Assembly" Performs Any Element of the Claims**

25    Infringement contentions may not "assume that certain elements of the patent are present

26  in the accused products." *Bender v. Maxim,* 2010 WL 1135762, at *2; *Bender v. Maxim*

27  *Integrated Prods.*, No. C 09-01152 SI, 2010 WL 2991257, at *2 (N.D. Cal. July 29, 2010)

28  ("These assumptions are insufficient to support plaintiff's obligation under Patent Local Rule 3–1

14

1   to provide [defendant] with 'fair notice as to where the alleged infringing [elements] are

2   located'") (citation omitted); *Theranos,* 2012 WL 6000798, at *4 ("'[V]ague contentions and

3   conclusory statements' which invite defendants and the court to assume that a limitation exists

4   fall short of providing a 'meaningful description of its theories' under Patent L.R. 3–1.")

5   (citation omitted).

6          Instead, a patentee must provide a "<u>factual basis</u> for [its] assertion that the products do, in

7   fact, infringe." *Tessenderlo Kerley,* 2012 WL 1253178, at *2 (emphasis added); *id.* at 4

8   (Infringement contentions must "put defendant on notice of . . . <u>what basis plaintiff has for its</u>

9   <u>belief</u> that the products meet each limitation"); *GN Resound,* 2013 WL 1190651, at * 3 (rejecting

10  infringement contentions that did not "identify[] the <u>factual basis</u> for many of the claim

11  limitations or disclos[e] the "specific link" between the claim limitations and Plaintiff's

12  infringement contentions") (emphasis added).   "Broad inferences cannot stand in place of factual

13  information." *Tessenderlo,* 2012 WL 1253178, at *2 (rejecting contentions "simply stat[ing] that

14  the accused products meet that limitation").

15         Notwithstanding these requirements−of which it has been made well aware−Innovus fails

16  to provide any factual basis whatsoever for its contention that the so-called "chip assembly 14" it

17  circled on the picture of one circuit board performs the elements of the claims.   For example, as

18  noted above, each and every asserted claim requires "motion compensated interpolation."

19  Section II.C.1, *supra*.   But while Innovus alleges that the chip assembly performs motion

20  compensated interpolation "to obtain an additional line between two adjacent lines of a given

21  field from picture information of at least one neighboring field," "generates an additional line

22  between existing adjacent lines of a given field to make animation more fluid," and does so using

23  "picture information of at least one of the neighboring fields," it does not cite to a single

24  specification, report, test, or other piece of factual information to support such statements

25  regarding the chip assembly.  *Id.*   Instead, Innovus simply asks Toshiba and this Court to blindly

26  accept its assumptions.   As this Court's case law makes abundantly clear, however, such

27  assumptions have no place under the Patent Local Rules.  *Bender v. Maxim,* 2010 WL 1135762,

28  at *2; *Theranos*, 2012 WL 6000798, at *4.   Simply put, every television presently on the market

15

contains a "chip"—Innovus cannot just take a picture of a chip in a Toshiba television and then, based on nothing more, simply assume that the chip contains various components that carry out the claim functions.  The Local Patent Rules require Innovus to provide a factual basis for its conclusion that the so-called chip assembly performs the claim elements.   This it has not done.

Innovus also does not provide any factual basis for its contention that the circled chip assembly performs the separate "vertical filtering" element, which is also recited in each and every claim.   To the contrary, Innovus again rests on unsupported assertions that the chip assembly "includes at least one filter . . . for processing the additional line using at least one of the adjacent lines" and that it includes, for example, "a multiplexer within one of the chips for multiplexing the additional line and the adjacent lines of the given field to form a non-interlaced picture signal."  These statements have no foundation.

Accordingly, Innovus's infringement contentions plainly fail to comply with the Patent Local Rules.  "Plaintiff cannot remedy the current inadequacy of the infringement contentions merely by circling portions of a commercially available datasheet."  *Bender v. Maxim*, 2010 WL 1135762, at *2.  But this is precisely what Innovus has done—namely circling a picture of a so-called chip assembly, making numerous assertions about the chip assembly, but providing no support for its assertions.  In so doing, Innovus has ignored its duty to provide the "factual basis for [its] assertion that the products do, in fact, infringe."  *Tessenderlo Kerley,* 2012 WL 1253178, at *2 (emphasis added);  *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1026 (N.D. Cal. 2010) (emphasis in original) ("Rather than provide a meaningful description of its theories, [Innovus's] vague contentions and conclusory statements invite [Toshiba] and the Court merely to assume the presence of [these claim elements])."

Nor has Innovus provided "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality."  Patent L.R. 3-1(c);  *Bender v. Freescale*, 2010 WL 1689465, at *4 ("The Patent Local Rules place the burden on Plaintiff to provide infringement contentions that specify the location of every claim element within the accused products.").   Innovus alleges that the "motion compensated interpolation" element occurs somewhere in the "chip assembly"—which it admits is composed of multiple chips—but it

16

1  does not indicate which chip allegedly performs the elements of the claims, or how the different

2  chips allegedly interact to perform the claimed elements.  And Innovus's contentions regarding

3  the "vertical filtering" step are even more ambiguous.  In this case, Innovus simply alleges that

4  "at least one of the chips" "includes at least one filter" that supposedly performs the claim

5  element.  But Innovus has again failed to identify which chip in the assembly allegedly performs

6  this step, much less identify any filter within the undefined chip that allegedly performs this step.

7         Such vague allegations do not "articulate the *precise way* in which [Innovus] believes the

8  [accused] products to be infringing." *Tessenderlo Kerley,* 2012 WL 1253178, at *4 (emphasis

9  added).  Indeed, Courts have repeatedly found similar assertions to be deficient.  *Bender v.*

10 *Micrel Inc.*, No. C 09-01144 SI, 2010 WL 520513, at *2 (N.D. Cal. Feb. 6, 2010) (rejecting

11 infringement contentions claiming that infringing elements were "located in the amplifier on the

12 integrated circuit contained in the product"); *Infineon Techs. v. Volterra Semiconductor*, No. C

13 11–6239 MMC (DMR), 2013 WL 322570, at * 3 (N.D. Cal. Jan. 28, 2013) ("Plaintiff references

14 a birds-eye image of the VT1195SFQ, which Plaintiff asserts 'shows a metal layer.' This birds-

15 eye perspective does not allow the viewer to discern whether the image depicts one or multiple

16 layers, let alone which specific layer(s) are shown. Even if Defendant could determine that the

17 image shows multiple layers, Defendant still is entitled to know which layer or layers allegedly

18 infringe Plaintiff's patent.") (citations omitted); *Canvs Corp. v. U.S.*, 107 Fed. Cl. 100, 109 (Ct.

19 Fed. Cl. 2012) ("[P]laintiff reproduces photographs lacking in detail . . . speculates that accused

20 elements are located behind protective housings although they cannot be seen, and assumes,

21 based upon the presence of control knobs or text on a sample display screen, that accused

22 devices operate in the same manner as the patent-in-suit. Such conclusory analysis . . . does not

23 meet plaintiff's obligations.") (citations omitted).  By offering such contentions, "[Innovus] has

24 made no attempt to identify the precise location within defendant's product where the infringing

25 component is located." *Bender v. Micrel*, 2010 WL 520513, at *2.

26        For these reasons, Innovus's Infringement Contentions should be stricken.

27

28

---

17

B.     **Innovus's Supposed "Support" For Other Contentions Does Not Address the Specific Elements of the Claims Or Provide a Link To The Accused Products**

To the extent that Innovus attempts to offer any factual basis for its contentions, it fails to provide any nexus to the Accused Products, or otherwise relate its alleged support to the claimed elements.   As discussed in Section II.C.2, *supra*, Innovus's contentions for the "motion compensated interpolation" element continue to cite to the same Toshiba website and press release that it cited to in its previous infringement contentions, which were stricken by this Court.   But as Toshiba has repeatedly explained, these references do not provide a factual basis for Innovus's assertions−at no point do they mention any claim element, such as "motion interpolation," "obtaining an additional line between two adjacent lines of a given field," or doing so "from picture information of at least one neighboring field."   These references, which were deficient when Innovus first cited them, remain deficient now.

Aside from the website and press release, Innovus's latest contentions for the "motion compensated interpolation" element cite only an owner's manual and a specification for the single television that Innovus charted−and then only cite these documents for method claims 2 and 3.   But the owner's manual and specification merely demonstrate that this television has a 1080p output and includes ClearFrame functionality, which can optionally be turned on by a third party.   Like the website and press release discussed above, neither of these references discuss the specific elements of the claims, or otherwise link the Accused Products to the claim elements.

The same is true for the "vertical filtering" element.   For example, while Innovus cites to a Wikipedia article and a patent discussing so-called "flicker filters," the portions cited by Innovus do not discuss the specific elements of the claims.   Nor does the Wikipedia article or the patent mention the Accused Products, ClearFrame, or even Toshiba in general.   Instead, Innovus attempts to use these references to "'make[] the unsupported leap' from the fact that Defendant's products perform [processing without adding flicker] to the conclusion that the products perform [vertical filtering to remove flicker] according to the claimed method."   *CSR Tech. v. Freescale Semiconductor*, 2013 WL 503077, at *3 (N.D. Cal. Feb. 8, 2013).   This it cannot do.   *Id.*   (A

18

1  patentee may not assume "that since [a process] in the Accused Products occurs, it must occur

2  according to the claimed method").

3      Accordingly, Innovus's contentions fail to map the Accused Products to the claim

4  elements as required by the Patent Local Rules. *See Network Caching Tech., LLC v. Novell, Inc.*,

5  No. C-01-2079-VRW, 2002 WL 32126128, at *6 (N.D. Cal. Aug. 13, 2002) (finding

6  infringement contentions insufficient where the patentee "provides no link between the quoted

7  passages and the infringement contention that simply mimics the language of the claim" and

8  does not explain "how the proxies described in the literature map onto the claim language");

9  *Bender v. Freescale Semiconductor, Inc.*, No. C 09-1156 PHJ (MEJ), 2010 WL 1689465, at *4

10 (N.D. Cal. April 26, 2010) (rejecting infringement contentions where "Plaintiff fails to properly

11 map and link the claim language to each accused product"); *Bender v. Advanced Micro Devices,*

12 *Inc.*, No. C–09–1149 MMC (EMC), 2010 WL 363341, at *2 (N.D. Cal. Feb. 1, 2010) (granting a

13 motion to compel where plaintiff "fails to properly map and link the claim language to each

14 accused product"). Such deficient contentions fail to "put [Toshiba] on notice of the specific

15 allegations of infringement—what basis plaintiff has for its belief that the products meet each

16 limitation." *Id.* at *4 (emphasis added).

17     Moreover, the remainder of Innovus's contentions for the "motion compensated

18 interpolation" and "vertical filtering" elements contain nothing more than unsupported

19 statements and assumptions regarding televisions signals, video processing, and motion

20 compensation, to name but a few. But, as discussed above, such assumptions violate the Patent

21 Local Rules: "While plaintiff's statements may not be untrue, they are based on assumptions. . .

22 . The Court will not order defendant to produce proprietary [documents] . . . based on an

23 assumption." *Bender v. Maxim*, 2010 WL 1135762, at *2; *Tessenderlo*, 2012 WL 1253178 at *4

24 ("Even assuming the truth of all assertions in the infringement contentions, plaintiff has failed to

25 identify the basis for its contention that the Accused Products contain [the recited element]").

26     For these additional reasons, Innovus's infringement contentions are deficient and should

27 be stricken.

28

1

2

**C.**     **Innovus Has Failed To Demonstrate That Its Single Claim Chart is Representative of All Accused Products**

The Patent Local Rules require a claim chart "identifying specifically where each limitation of each asserted claim is found within <u>each</u> Accused Instrumentality."  Patent L.R. 3-1(c) (emphasis added).  To the extent that Innovus contends that it need only produce one claim chart for the more than 40 products it has accused of infringement, it thus "bears the <u>burden of explaining why</u> its claim chart is representative of all accused products."  *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. CV 12–01971–CW (KAW), 2013 WL 633406, at *4 (N.D. Cal. Feb. 20, 2013) (emphasis added); see also Toshiba's First Motion Hearing Transcipt at 28:4-5 ("But it's [<u>Innovus's</u>] <u>responsibility</u> to identify each Accused Device and which component in each Accused Device.") (emphasis added).  "Simply asserting that . . .  every product defendant has created contains the patented [component] because one product does, is insufficient to satisfy the Patent Local Rules."  *Bender v. Micrel*, 2010 WL 520513, at *2.

In its latest infringement contentions, Innovus has failed to meet its burden of showing why its single claim chart is representative of all the Accused Products.  Instead, Innovus again relies on nothing more than a conclusory statement, completely devoid of any factual support, to allege that it need only produce one chart.  Specifically, Innovus provides four pictures of a single circuit board from <u>one</u> of more than <u>forty</u> accused televisions (labeled with part no. 75026684), and then alleges, without explanation, that this circuit board "is representative of all circuit boards for all Toshiba TV's."  *See* Section II.C.3, *supra*.  Based on nothing more, Innovus declares "[t]hus, there is no need to obtain and describe the circuit boards for each and all of the Toshiba TVs."  *Id.*

But "such sweeping statements  . . .  are in direct violation of Rule 3-1(b)."  *Bender v. Freescale*, 2010 WL 1689465, at *3; *Bender v. Micrel*, 2010 WL 520513, at *2. "Other than [Innovus's] bare assertion, there is nothing in the record presented indicating, for example, that the [one] product[] for which plaintiff provided claims charts share[s] common circuitry with the other accused products." *Bender v. Infineon*, 2010 WL 964207, at *2; *Bender v. Advanced Micro Devices*, 2010 WL 363341, at *1 ("Mr. Bender's use of representative claim charts is improper

20

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS - Case No. 12-cv-00659-WHO

because he has not shown that any of the accused products for which he has provided claim charts are in fact representative of any other product. Mr. Bender has not shown, for example, that the accused products share the same or substantially the same infringing circuitry as any other product."). In this case, Innovus has not shown that each circuit board is the same, much less that each "chip assembly" on the circuit board is the same.

Indeed, Innovus's statements are belied by its reference to twelve other "examples" of Accused Televisions. As Innovus's infringement contentions demonstrate, each of these twelve televisions use circuit boards with different part numbers. And not one of the circuit boards for these twelve Accused Products shares the same part number as the lone television that Innovus charted. Innovus offers no explanation whatsoever for how the circuit boards for these twelve televisions−which have <u>completely different part numbers</u>−are in any way representative of the circuit board referenced in its chart. And aside from these twelve "examples," Innovus has completely ignored the remaining Accused Products.

Accordingly, Innovus has not met its burden of "showing that [its] use of 'representative' claim charts is proper." *Bender v. Infineon*, 2010 WL 964197, at *2. For this additional reason, its infringement contentions should be stricken.

### D.   Innovus's Vague and Boilerplate Statements Regarding the Doctrine of Equivalents Do Not Comply With The Patent Local Rules

Innovus's boilerplate statements regarding infringement under the doctrine of equivalents are also inadequate under Patent Local Rule 3-1(e). To assert infringement under the doctrine of equivalents, Innovus must provide a specific analysis, on an element-by-element basis, as to its theory of why the Accused Toshiba Products infringe under the doctrine. *See Implicit Networks, Inc. v. HewlettPackard Co.*, No. C 10–03746 SI, 2011 WL 3954809, at *3 (N.D. Cal. Sep. 7, 2011). Blanket statements and boilerplate reservations are not sufficient. *Id.; see also, e.g., Optimumpath, LLC v. Belkin Int'l, Inc.*, No. C 09–01398 CW, 2011 WL 1399257, at *8 ("[J]udges of this court have rejected plaintiffs' attempts to assert claims under the doctrine of equivalents with blanket statements"); *Rambus Inc. v. Hynix Semiconductor Inc.*, 2008 WL 5411564, at *3 (N.D. Cal. Dec. 29, 2008) ("The Patent Local Rules require a limitation-by-

21

limitation analysis, not a boilerplate reservation."); *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, No. C 01–4925 SBA, 2004 WL 5363616, at \*4-6 (N.D. Cal. Mar. 2, 2004) (rejecting blanket statement asserting infringement under the doctrine of equivalence for failure to comply with Rule 3-1).

Innovus's Infringement Contentions do not provide any such analysis.  Instead, Innovus simply adds a blanket reservation that "[i]nfringement has been direct and literal and/or under the doctrine of equivalents."  *See* Section II.C, *supra*.  This assertion is manifestly insufficient.  "The doctrine of equivalents exists to prevent 'a fraud on the patent.' It is not designed to give a patentee a second shot at proving infringement '[t]o the extent that any limitation is found to be not literally present.'"  *Rambus*, 2008 WL 5411564, at \*3.  Such assertions do not "articulate the precise way in which [Innovus] believes the [accused] products to be infringing," *Tessenderlo Kerley*, 2012 WL 1253178, at \*4, or crystallize Innovus's theories of the case as required by the Patent Local Rules.  Innovus's deficient assertions regarding the doctrine of equivalents thus also warrant a striking of its infringement contentions.

### E.   Innovus's Repeated Failures to Comply With The Patent Local Rules Warrant Striking Its Infringement Contentions Without Leave to Amend

For at least the reasons explained above, Innovus's contentions should be stricken.  The original deadline for providing infringement contentions was January 18, 2013.  Notwithstanding the deficiencies in Innovus's previous sets of contentions, this Court provided Innovus yet another opportunity to submit infringement contentions that were to comply with Patent Local Rule 3-1.  Dkt. No. 52.  But the court warned Innovus that this was its last chance:

> If I get another motion, if I get another motion as to the adequacy of the so-called third set of contentions and if I find that they are, themselves, inadequate, not only will they be stricken with no further leave to amend, but I am going to assess costs against your client for the expenses of Toshiba in bringing yet another motion to strike.

*See* Section II.B., *supra*; Dkt. No. 52 ("Because this is plaintiff's third opportunity to provide infringement contentions, if the amended contentions are inadequate, plaintiff may be denied a further opportunity to amend the contentions and may be ordered to pay costs if defendants prevail on another motion to strike.").

1    Moreover, since the deadline for providing infringement contentions has long since

2   passed, any further amendment "may be made only by order of the Court upon a timely showing

3   of good cause."  Patent Local Rule 3-6.  "'Unlike the liberal policy for amending pleadings, the

4   philosophy behind amending claim charts is decidedly conservative, and designed to prevent the

5   'shifting sands' approach to claim construction.'"  *Acer, Inc. v. Tech. Properties Ltd.*, 2010 WL

6   3618687, at *3 (N.D. Cal. Sept. 10, 2010) (citation omitted); *see also* Dkt. No. 47 at 7-13.  Given

7   Innovus's numerous failures to provide Toshiba with adequate infringement contentions, and this

8   Court's warning regarding the consequences if Innovus did not do so, Innovus should now be

9   held to have finally exhausted its opportunity to file infringement contentions.  *Shared Memory*

10  *Graphics LLC v. Apple, Inc.*, No. C-10-02475 MMC (JSC), 2011 WL 3878388, at *8 (N.D. Cal.

11  Sept. 2, 2011) (striking plaintiff's infringement contentions in part and refusing to grant leave to

12  file amended infringement contentions); *Theranos*, 2012 WL 6000798, at *7 (granting motion to

13  strike).

14    Innovus Prime should also be ordered to pay Toshiba's attorneys fees in connection with

15  this motion.  Toshiba thus asks the Court to permit Toshiba to present a fee application within

16  ten (10) days after a decision on this motion.

17                    **IV.    CONCLUSION**

18    For the foregoing reasons, Toshiba respectfully requests that the Court strike Innovus's

19  infringement contentions without leave to amend and award Toshiba its attorneys fees in

20  connection with this motion..

21  DATED:  August 5th, 2013.              DORSEY & WHITNEY LLP

22

23

24                    By: */s/* Paul T. Meiklejohn
                      PAUL T. MEIKLEJOHN (*PRO HAC VICE*)
25                    EMAIL: MEIKLEJOHN.PAUL@DORSEY.COM
                      Douglas F. Stewart (*PRO HAC VICE*)
26                    EMAIL: STEWART.DOUGLAS@DORSEY.COM
                      Dorsey & Whitney LLP
27                    701 Fifth Avenue, Suite 6100
                      Seattle, WA 98104
28                    Telephone: (206) 903-8800

23

1   Facsimile: (206) 903-8820

2   MARTHA LUEMERS (SBN 104658)
3   E-MAIL: LUEMERS.MARTHA@DORSEY.COM
    Dorsey & Whitney LLP
4   305 Lytton Ave.
    Palo Alto, CA 94301
5   Telephone: (650) 857-1717
    Facsimile: (650) 857-1288
6
7   Attorneys for Defendants Toshiba Corporation and
    Toshiba America Information Systems, Inc.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

24